UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JUL -3 PM 12: 05

CLERK
BY (signature)
DEPUTY CLERK

Name(s) of Plaintiff(s)

**Drapeau Richard** pro se

v.

Case No.: 5:18-cv-107

Name(s) of Defendant(s)

**ProShares Trust, ProShares Advisors LLC**
**Michael L. Sapir** in official capacity
**John Does** Several Authorized Participants

# COMPLAINT

Jury Requested

Demand **$ 220,913.00**

## PARTIES

1. Name and Address of Plaintiff.
   **Richard Drapeau,**
   **218-3375 Ridgewood ave,**
   **Montréal QC Canada.**

2. Name and Address of Defendant
   **ProShares Trust, ProShares Advisors LLC**
   **7501 Wisconsin Avenue, Suite 1000E**
   **Bethesda, MD 20814 USA**

3.  Name and Address of Defendant in official capacity
    **Michael L. Sapir**
    **7501 Wisconsin Avenue, Suite 1000E**
    **Bethesda, MD 20814 USA**

4.  Name and Address of Defendant
    **John Does** several

## JURISDICTION

5. The Allegation of jurisdiction is based on Diversity and the amount of the demand.

## CLAIMS

6. BREACH OF FIDUCIARY DUTY. From **U.S. Code Title 29 Chapter 18 Subchapter 1 Subtitle B Part 4 § 11109 Liability for breach of fiduciary duty**, I claim that I am entitled to relief because of ProShares' breach of fiduciary duty by boldly entering in a recklessly disordered markey, after the close of regular trading hours even though it had the liberty, authority and duty to stay away. Under normal day market conditions the first duty of the manager is to aim for the Fund's objective. In abnormal dangerous late market conditions the first duty is to protect the shareholders' interests. ProShares was expected to know the difference and to act accordingly to protect the assets of the SVXY Fund, an Exchange Traded Fund.

7. ProShares is the creator and manager of SVXY an ETF (Exchange Trading Fund) as filed with the SEC (Securities Exchange Commission) and charges a fee to manage the Fund. ProShares Advisors LLC is a registered investment advisor.

8. John Does, Authorized Participants, are "large institutional investors" as described by the ProShares prospectus, who act in concert with Proshares in an exclusive relationship. All are securities industry regulated entities dealing with each other as principals or agents.

9. I, Richard Drapeau am a man, 72 years of age, retired, an individual investor, here acting in my own name (pro se) and on February 5th and 6th, I owned 2300 shares of SVXY.

10. As the paid manager of the Fund, ProShares has a fiduciary duty to the shareholders and responsibilities for the actions of its agents. The discovery process will explore if ProShares was pushed to act by others having an interest.

11. John Does (Authorized Participants and others), to be identified in the discovery process, acted in concert with ProShares in a stratagem where ProShares buys and sells (issues and redeems) shares to the John Does and they, in turn access the stock market.

12. As manager, ProShares, acting alone or in concert on Feb. 5th 2018. Failed in its duty to protect the shareholders in contradiction to the rules and the regulations of the SEC, the CFTC (Commodities Futures Trading Commission) and other regulatory bodies.

13. In a June 27th 2013 application for exemptions to the SEC, Proshares indicated its prudence toward some securities and stated that it will not invest in such securities it "deems to be illiquid or for which pricing information is not readily available". It did not follow that disclosure on February 5th 2018 even if ProShares is very much aware that lack of liquidity is dangerous.

14. The value of SVXY is closely related to VIX futures. VIX has a known liquidity problem and can become chaotic at times, a prudent manager should step aside when reckless disorder becomes apparent. Illiquidity shows up with some frequency. *'We want to be clear that we were disappointed with the [unusual VIX event on April] 18th, and we saw it as a liquidity challenge and nothing more. We're out now trying to enhance that liquidity.'* –Chicago Board Options Exchange President Chris Concannon.

15. On February 24, 2011, the CFTC held an open meeting on the Twelfth Series of Proposed Rules under the Dodd-Frank Act. Among the topics at this meeting was an interpretive order proposal regarding disruptive trading practices. The proposal defines as disruptive any practice that, among others, demonstrates intentional or **reckless disregard for orderly execution.**

16. Violating federal securities directives (SEC bulletin July 1, 2012 Measures to Address Market Volatility), the Defendants acting in concert in a stratagem of primary and secondary stock market operations, and on the futures market, on February 5th and 6th, disregarding all fiduciary duties and acting in unison, recklessly entered into trades after regular trading hours, on and outside regulated Futures and Securities Exchanges and by their actions destroyed the assets of the Fund in total breach of fiduciary duties. ProShares had the fiduciary duty to step down in those conditions. Had ProShares stepped back when the disruptions became apparent, no additional losses would have occured. Panic is not a management tool.

4

17. These actions were assuredly not in the best interest of the shareholders. Some motivation pushed the Defendants to participate in the frenzy and it will be known through discovery, which Defendants benefited the most from the collapse.

18. These complaints are for the breach of duties and for price setting but not to challenge the prospectus. Properly managed, I am of the opinion that SVXY is a valid product. Nothing in the prospectus forces ProShares to enter wild illiquid after hours situations, and everything obliges a fiduciary to be prudent, and stay away from situations of **reckless disregard for orderly execution,** especially when a major disruption is obvious to every person familiar with the securities market, as it was during the last minutes, on February 5th 2018. ProShares had the duty and authority to stop trading in a recklessly disordered market.

19. ProShares did not perform its fiduciary duty, when it chose to blindly pursue some technical objective, when there were glaring reasons for holding back, just as airline companies do not let their planes fly into a nasty storm even if they have a contract to fly you somewhere.

20. At 4:00 p.m. on February 5th 2018, the official closing market price for SVXY was $71.82. That is still, to this day, the official closing price. During the last minutes, some of the defendants, in synchronous actions, entered the futures markets and primary markets and secondary markets transactions after the close, with entities and at such prices and conditions yet to be discovered, and in doing so, lost most of the Fund's money in minutes. The discovery process will illuminate any arrangements that may have existed between the Defendants in anticipation of such a crash.

21. Especially by its actions in the futures market, ProShares, with temerity, walked into a recklessly disordered market, possibly trading with Authorized Participants, or others, or itself, endangering its clients, holders of the shares. All these situations constitute a breach of fiduciary duty, or worse. The Defendants had the liberty and flexibility to avoid such irrational actions. That day, as a result of the coordinated actions, ProShares, exposing the massive losses to the Funds holders, its clients, reported a residual asset value of $ 3.96.

22. US securities trade around the globe at all hours, at wildly varying prices, still, the US closing prices are the reference, even for the IRS. For SVXY it was $71.82. Not $3.96.

23. ProShares decides at what time and at what price it will buy and sell (redeem and issue) SVXY shares, generally around 4:12 p.m. and sometimes up to 4:15 p.m. . Given the unhinged conditions after the official NY close at 4:00 p.m., ProShares had the authority to stop trading and to declare a time, 4:00 p.m., or 4:01, or 4:02….for the daily movement and value. The prospectus gives ProShares that flexibility for a reason. That reason is to allow the management of ProShares to value its assets in normal conditions and not in recklessly disordered conditions.

24. In such disordered conditions a competent manager would stop all trading activities, thus acting prudently to protect the shareholders. Proshares has claimed, to me and to others, that SVXY performed successfully as it was supposed to perform according to the prospectus, but that is the same as the captain of the Titanic telling the drowning passengers that the Titanic performed successfully according to its travel plan.

25. In a letter addressed to me on June 8th 2018, ProShares makes the affirmation that on Feb. 5th 2018, "the S&P 500 VIX Short-Term Futures Index was up 96.01% for the day" That is a misleading statement describing the price movement for that **date**. For VIX futures a trading **day** is different from a trading **date**, a trading **date** if defined by a calendar, a trading **day** is defined by industry rules, (CBOE in this case). Contrary to ProShares' affirmation, the Index did not have an increase of 96.01% . Their reference numeric values were not given but that measure probability comes from the high and low of that **date** 110.23/56.24 = +96%, but for the **day**, the movement was at most 56.24/99.52= +77%. Their error may be in good faith but it is still a grave error demonstrating that ProShares had lost control and should have stopped trading to protect the shareholders' interests.

26. The Index used as reference by the defendants is not a tradable product, it is only calculations, calculations of varying estimated values for volatility futures derived from the expected volatility ( a forecast) of S&P options. In view of such complex sequential relationships of estimated numbers, in illiquid aftermarket volatile conditions, it was the defendant's duty to protect the shareholders from instantaneous numeric disruptions, anticipating ( a management competence and duty), that the wild calculations disruptions would end in a few minutes, at 4:14:59 precisely, for everybody. No one can know the future but everyone can step on the brakes when approaching a cliff, ProShares was the paid driver.

27. During the time between 4:00 p.m. and 4:14:59 p.m. when the large majority of the Standard & Poor listed securities had already stopped trading since 4:00 p.m., it would have been more prudent and reasonable for ProShares to consider the 4:00 p.m. values as more representative of reality, than the wildly varying after hours fluctuations calculations, trying to measure the

amplitude of movements of immobile securities halted for the day. It does not make sense for a reasonable person to expect accurate movement measurements for stocks that had stopped moving. Discerning procedures should exist, be tested and applied to such situations as a management tool. A management fee is charged to do something beyond turning on the switch for an algorithm. Competence, proper tools, management skills and honesty are surely even more needed.

28. ProShares is in an exclusive relationship with the Authorized Participants, where the individual shareholders are excluded. Together they issue, buy and bring to market the shares of SVXY and they have the duty to act prudently, to exercise sound judgement, to place the ETF holders' interest above their own interests and objectives, and to act strictly within the guidelines providing for successive 5 minutes pauses when securities move more than a certain percentage starting at 5%. From the closing price of $71.82, in steps of 5% it would have taken three 5 minutes pauses for SVXY to fall to $61.00 before 4:14:59 p.m., and everything stops for the day. Somehow, by that time, the Defendants already caused a declared value of $3.96.

29. Even if the ProShares prospectus anticipates a possible 100% decrease in one day, it has to happen within the rules, possibly over hours, but not in minutes, not in dramatic unregulated jumps. Rules exist to protect the investing public from such things as a "flash crash" or false rumors (in this case Credit Suisse bankruptcy) or other deliberate or accidental damaging disruptions. Managers should know when to stop, on their own, and not wait for some enforcement. A traffic 'end of the road' sign does not need a police officer to make you stop. The regulatory delays exist to pause the market so that market participants can access and assess

information and form a decision for their eventual actions on a level playing field. When the shareholders lose 96% , I find it hurtful to hear a manager say he did a great job.

30. To issue and redeem shares is to sell and buy shares, even if it is within a select group of Authorized Participants. When ProShares and that select group act in a coordinated way they share responsibility. The select group is the door to the listed market, and it will be important in the discovery process, to find out which participants made what trades and with which counterparts.

31. Nothing, no prospectus, no stratagem, no combination of strategies using different products, futures, swaps, primary market operations, John Does or others, nothing should justify an unchecked 96% loss in a few minutes in the shares of a Fund, especially after hours.  A financial product cannot be created and managed with the intentional or unintentional effect of evading the securities laws and rules.  A management fee is also paid to protect from system breakdows.

32.  No reasonable person should expect for the rules, to not apply to SVXY.

33.  On February 12, 2018, there was made public a letter from a whistleblower to the Securities & Exchange Commission ("SEC") and the Commodity Futures Trading Commission ("CFTC") that disclosed that the whistleblower had submitted a TCR (tip, complaint or referral form) to the agencies.
> The letter said: Our client's TCR submission disclosed market manipulation scheme that takes advantage of a pervasive flaw in the Chicago Board Options Exchange (CBOE) Volatility Index (VIX). The flaw allows trading firms with sophisticated algorithms to

move the VIX up or down by simply posting quotes on S&P options and without needing to physically engage in any trading or deploying any capital. This market manipulation has led to multiple billions in profits effectively taken away from institutional and retail investors and cashed in by unethical electronic option market makers. Last week, the CBOE issued a statement and hosted a call to assure investors that the massive losses were limited to a small number of exchange-traded products (ETPs) that were flawed by design. Consistent with our TCR submission, we contend that the liquidation of the VIX ETPs last week was not due solely to flaws in the design of these products, but instead was driven largely by a rampant manipulation of the VIX index. **** As described in detail in our TCR filing, the VIX is highly subject to manipulation by market participants with the ability to rapidly post quotes in the market for S&P options. That is because the VIX is a theoretical index, which does not rely on trading activity but mid-prices, that can be moved up or down by posting quotes without any physical trading taking place.

This shows that the CBOE blames the design of SVXY on ProShares, and that the SEC and CFTC contend "rampant manipulation". I blame the mismanagement by ProShares disregarding the best interest of the shareholders in an abnormal situation. If it is not the product that is deficient, then it is the willful blindness by ProSares management toward reckless disorder.

34. On July 22nd 2013, The United States Court of Appeals, decided against challenges to the SVXY prospectus. In Re: ProShares Trust Sec. Litig., No. 12-3981 (2d Cir. 2013). Again, if it not the product, it is the deficient management by Proshares. If a situation is out of control, stay out of the situation.

35. **Manipulation of security prices. U.S. Code › Title 15 › Chapter 2B › § 78i,.** I claim that I am entitled to relief because on February **5th** the Defendants, through actions described above, participated in the "flash crash", caused me a major loss of money and made to be declared to my broker a made up value for my ETF's, at a made up price extremely different from the official closing price of $71.82 published on NASDAQ,( National Association of Securities Dealers). The Defendant later caused a closing price of $11.70 to be declared (after correcting from $3.96) with the consequence that my account at my broker showed retroactively, an immediately greater loss of $60.12 per share for my 2300 shares, for a loss of $138,529.00 during a trading period of minutes after the market close.

36. **Manipulation of security prices. U.S. Code › Title 15 › Chapter 2B › § 78i**,. I claim that I am entitled to relief because on February the **6th** 2018 the Defendants, having the previous day participated in creating a fabricated closing price of $3.96 initially, later revised to $11.70, then continued acting on that false basis. The Index tracked by SVXY, on February 6th, ended the day with a favorable move of 19.6%. From the NASDAQ official closing price of $71.82, that is a value of (71.82 X 19.2%) = $ 14.08 per share. For my 2300 shares the total is $ 32,384.00 which I was deprived of, because of the errors and misconducts of the Defendants.

**RELIEF**

A-    The first relief I solicit of this Court is for an amount in excess of $ 50,000.00 in punitive damage, and for treble damages, and for any further and other relief as this Court deems just and proper for the breach of fiduciary duties and the wounding consequences of entering illiquid markets contrary to its own statements to the SEC and to the interests of the shareholders and for causing made up data to be sent to my broker, through some yet unidentified process and

channel, at a made up price very different from the official NASDAQ closing price, an action wiping out in minutes most of my assets which at 72 years of age I have no way of making back.

B-    The second relief I solicit of this Court is for $138,529.00, representing the otherwise irrecuperable loss caused by the defendant's reckless actions and the made up closing price, as opposed to official NASDAQ data and as measured in paragraph **35**.

C-    The third relief I solicit of the court is for $ 32,384.00 representing the otherwise irrecuperable loss caused by the defendant's reckless actions and by the made up closing price, as opposed to official data and as measured in paragraph **36**.

D-    I pray the Court to order the parties to appear for one or more pretrial conferences.

E-    I pray the Court to order expedited discovery in view of my age.

F-    I also pray this Court to order each party to pay for its own legal costs and expenses as each is honestly seeking justice in good faith.

Date: June 26th 2018        Signature: _____ pro se

Name:  Richard Drapeau

Address: 218-3375 Ridgewood, Montreal QC Canada

Telephone No.:    514-433-2761